IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMIE DEMOND BELL, etc.,** ) | |
| ) | |
| Petitioner, ) | |
| ) | **CIVIL ACTION NO. 07-0261-WS** |
| v. ) | |
| ) | **CRIMINAL ACTION NO. 03-0210-WS** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

## ORDER

This matter is before the Court on the petitioner's motion to vacate, filed pursuant to 28 U.S.C. § 2255. (Doc. 78). The respondent has filed a response and the petitioner a reply, (Docs. 83, 89), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to vacate is due to be denied.

## BACKGROUND

The petitioner was the sole defendant in a two-count indictment. Count One charged the petitioner with being a felon in possession of a firearm. Count Two charged him with receiving, possessing, concealing, bartering, selling and disposing of a stolen firearm. Both counts addressed the same firearm on the same date.

The petitioner was represented at trial by Carlos Williams. He proceeded to trial against the advice of counsel and elected to testify on his own behalf, also against the advice of counsel. After approximately 3½ hours of deliberation, the jury announced it was deadlocked. Over objection, the Court delivered an *Allen* charge. Approximately 45 minutes later, the jury returned a verdict of guilty on Count One. It reached no verdict on Count Two.

At trial, Billie Barnes testified that she hired the petitioner to lay some carpet in

her rental trailer in McIntosh on July 14, 2003.  The trailer was within a few yards of Barnes' home and car.  At some point, the petitioner rode in her car to a store to get some more flooring, and he stayed in the car while she went inside.  After they returned to her home and the petitioner unloaded the materials from the car, Marcus Sullivan arrived to help the petitioner.  The next day, a relative called Barnes and told her that Sullivan had told him that the petitioner had stolen her handgun and sold it to Nathan Brown.  Barnes checked her glovebox, where she kept the gun and had seen it the previous morning, and found it missing.  (Doc. 69 at 21-25).

   Barnes found the petitioner at a third party's house and demanded her gun back within five minutes.  The petitioner denied any knowledge about her gun.  Later, Barnes confronted the petitioner at another house, and he told her he would take her to retrieve the weapon.  They drove to Barnes' house, where the petitioner stated he had given the pistol to Brown, who lived in Calvert.  The petitioner told Barnes that he found the gun on the ground near the trailer.  Barnes called Brown, who told her that the petitioner had sold him the gun for $20.  (Doc. 69 at 26-30, 38-39, 43).

   Police chief Michael Barnett testified that the petitioner called him and complained that Barnes had accused him of stealing a pistol.  The petitioner did not want to file a complaint but wanted to be left alone.  Barnes' sister later called and asked Chief Barnett to come to Barnes' house.  When he arrived, he heard Barnes and the petitioner talking.  He heard the petitioner say that he found the gun on the floorboard of the car but also that he found it on the ground next to the car.  Barnett also heard the petitioner tell Barnes that he had given or sold the gun to someone in Calvert.  (Doc. 69 at 56-57, 62-63).

   Brown testified that the petitioner showed up at his house in Calvert on the evening of July 14 saying he had heard that Brown was looking for a handgun and that he (the petitioner) had one.  They negotiated a price of $20, and the petitioner produced the weapon, which was strapped on his hip.  (Doc. 69 at 44-45, 50, 54).

   Chief Barnett left Barnes' house and went to Calvert, where he questioned Brown

and took his statement.  He recovered from Brown the weapon that Barnes kept in her glovebox.  (Doc. 69 at 57-59).

Mary Tcacik testified that the weapon was manufactured in California.  (Doc. 69 at 19).  The parties stipulated that the petitioner had a prior felony conviction.  (*Id*. at 69).

Trial counsel, in cross-examination and closing, attempted to show that Sullivan had access to Barnes' car on July 14, that he was the source of the information about the gun being taken, that the prosecution failed to call him as a witness, that Chief Barnett failed to write in his report that the petitioner had admitted taking the gun, that the time given by Brown for his encounter with the petitioner made it unlikely he could have been there, and the lack of evidence of the petitioner's fingerprints on the gun.  (Doc. 69 at 31-34, 46-50, 103-06).

The petitioner testified that Sullivan did not arrive after the trip to the store but was there almost all day.  He also testified that Sullivan unloaded materials from the car, because he (the petitioner) was recovering from gunshot wounds and surgery.  He further testified that Sullivan was with him at the third party's house on July 15 and that, when Barnes approached, Sullivan suddenly ran away.  He testified that Barnes had threatened to kill him if he did not return the gun within five minutes, prompting him to call Chief Barnett and try to file a report, but Barnett would not accept it.  The petitioner denied having possessed or even seen the gun.  He denied every statement attributed to him by Barnes, Brown and Chief Barnett, and he accused them of lying.  He explained Barnes' motive for lying as being to keep from having to pay him the $26 he had earned on July 14.  (Doc. 69 at 75-87, 93-94).

The petitioner had four prior felony convictions, and each was brought to the jury's attention due to his testimony.  The convictions were for second degree robbery, second degree burglary, second degree receiving stolen property, and conspiracy to distribute a controlled substance.  The petitioner pleaded guilty to three of these charges, but testified he was not guilty of any of the four but was "set up" by coercion, false

promises, and guilt by association. (Doc. 69 at 88-90).

The Court appointed Lila Cleveland to represent the petitioner on appeal. (Doc. 51). Counsel filed an *Anders* brief. The Eleventh Circuit's "independent review of the entire record reveals that counsel's assessment of the relative merits of the appeal is correct," and it concluded that its "independent examination of the entire record reveals no arguable issues of merit." (Doc. 76 at 7).

## CLAIMS PRESENTED

The petitioner asserts that both his trial counsel and his appellate counsel were ineffective. In particular, he asserts the following:

- Trial counsel failed to request a mental evaluation to determine the petitioner's competency to stand trial;
- Trial counsel failed to object to hearsay testimony;
- Trial counsel failed to adequately inform the petitioner of the dangers and disadvantages of testifying in his own defense;
- Appellate counsel failed to argue that the Court improperly limited cross-examination of a witness;
- Appellate counsel failed to argue that the Court erred in not granting a judgment of acquittal based on failure to prove venue;
- Appellate counsel failed to argue that the Court erred in giving an *Allen* charge;
- Appellate counsel failed to argue that the Court erred in denying a downward departure due to the petitioner's mental capacity;
- Appellate counsel failed to argue that the Court erred in not granting an acquittal on the basis of inconsistent verdicts.

(Doc. 78 Attachment at 1-3).

## DISCUSSION

To establish ineffective assistance of counsel, "a petitioner must show that counsel's performance was deficient and that he was prejudiced by that deficiency. A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." *Hagins v. United States*, 267 F.3d 1202, 1204-05 (11th Cir. 2001) (internal citations omitted); *accord Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001); *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990). Deficient performance requires a showing that counsel's performance is "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." *Id.*[1] Prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." *Id.*[2]

"Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (internal quotes omitted). Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel. *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir.

---

[1] A petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms." *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that *no* reasonable lawyer, in the circumstances, would have done so. ... Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (emphasis added) (internal quotations and citations omitted).

[2] A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Gallo-Chamorro*, 233 F.3d at 1303-04. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross*, 893 F.2d at 1292 (citation omitted).

1994). Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

The existence of a reasonable probability of a different result had counsel performed differently depends in great measure on the strength of the government's case. *E.g., Hallford v. Culliver*, 459 F.3d 1193, 1201 (11th Cir. 2006); *Parker v. Secretary for Department of Corrections*, 331 F.3d 764, 788 (11th Cir. 2003). Here, the government's case was based on the testimony of three witnesses, including a police chief and two other witnesses with no criminal history or other significant credibility issues. Two of these witnesses heard the petitioner confess to possessing the weapon, and the third saw the weapon on the petitioner's person and received it directly from him. Even excluding the petitioner's ill-advised testimony, the evidence against the petitioner for possessing the firearm was mountainous. Demonstrating a reasonable probability of a different result had trial counsel performed differently would require quite an impressive showing indeed.

## I. Ineffective Assistance of Trial Counsel.

### A. Failure to Request a Mental Evaluation.

In support of a motion for downward departure, trial counsel obtained a psychological evaluation of the petitioner. (Doc. 44). The petitioner argues that counsel should have requested a mental evaluation prior to trial in order to show that he was incompetent to stand trial. (Doc. 78 Attachment at 1; Doc. 89 at 2).

"The legal test for competency is whether the defendant had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational as well as factual understanding of the proceedings against him." *United States v. Nickels*, 324 F.3d 1250, 1252 (11th Cir. 2003) (internal quotes

omitted). The petitioner does not contend that he was incompetent under this definition, and the record evidence would negate any such assertion.

As to his ability to communicate with his attorney, the psychological evaluation found that the petitioner's "comprehension of spoken language appeared normal." (Doc. 44 at 6). While counsel stated that it had been "very difficult to communicate effectively" with the petitioner, he limited this difficulty to disagreement between counsel and client on how to proceed. (*Id*. at 1). Disagreeing with counsel, however, does not show an inability to consult with him.

As to his understanding of the proceedings against him, the Court at sentencing made the finding, based on its observations of the petitioner at trial, that he "understands the process very well" and that he attempted to manipulate the evidence in order to gain an acquittal. (Doc. 71 at 18). That the petitioner may have "act[ed] contrary to his interest" in proceeding to trial and insisting on taking the stand, (Doc. 44 at 1), may suggest that he lacks good judgment, (*id*. at 7), but it does not suggest he lacked a rational understanding of the proceedings.

"[D]efense lawyers cannot have improperly prejudiced a defendant — depriving him of his constitutional right to counsel — by not asserting the need for (or appealing about) a competency hearing when the defendant was, in fact, competent for the pertinent period." *Moore v. Campbell*, 344 F.3d 1313, 1324 (11th Cir. 2003). Because the petitioner has identified no evidence supporting the proposition that he was in fact incompetent to stand trial, counsel was not ineffective for seeking an evaluation before trial, and the petitioner was not prejudiced by the failure.

### B. Failure to Object to Hearsay Testimony.

Billie Barnes testified that, on July 15, "I got a call from Javon Adams, and he told me that Marcus told him that Jammy Bell had stole my pistol." (Doc. 69 at 25). Trial counsel did not object to this double hearsay testimony. (*Id*.). The petitioner argues that

this failure constitutes ineffective assistance.  (Doc. 78 Attachment at 1-2).

Whatever counsel's reason for not objecting, the petitioner cannot establish that, but for this sentence, there is a reasonable probability he would not have been convicted of possessing the firearm.  As noted, the firsthand evidence that he possessed the gun was overwhelming, with Barnes and Chief Barnett hearing the petitioner confess to possession and Brown observing the possession.  While the hearsay statement may have had some significance with respect to the charge that the weapon was stolen, it had no significance with respect to the only charge of which the petitioner was convicted, and the petitioner was not prejudiced by counsel's failure to object.

### C.  Failure to Advise About Testifying.

On the morning of trial, the petitioner informed trial counsel that he wished to testify.  Counsel advised him not to do so.  The petitioner heard counsel so inform the Court, was offered the opportunity to respond, but did not do so.  (Doc. 69 at 4).  After the government rested, trial counsel notified the Court that he had again advised the petitioner not to testify, based primarily on the government's ability to impeach his testimony, including with the petitioner's extensive record of convictions.  The petitioner told the Court he had decided not to testify, but moments later he recanted.  When the Court reminded him of the danger of impeachment, the petitioner insisted that he wanted to testify regardless.  (Doc. 69 at 71-73).

Ignoring the record, the petitioner argues that counsel never informed him of the dangers and disadvantages of testifying, which he identifies as cross-examination by the government and the presentation of his criminal convictions to the jury.  (Doc. 78 Attachment at 2; Doc. 89 at 3).  These are in fact precisely the risks of which the petitioner was explicitly warned on the record, which negates any allegation of deficient performance by counsel.

## II. Ineffective Assistance of Appellate Counsel.

The respondent argues that the Eleventh Circuit's disposition of the petitioner's appeal — independently reviewing the record and finding no arguable issues of merit — negates his ineffective assistance claims as a matter of law. (Doc. 13-14). As plausible as this argument appears,[3] it is unsupported by any citation to authority, and the Court accordingly declines to rest its decision on this ground.

There is another, related reason that the petitioner's claims might be meritless as a matter of law. The premise of the petitioner's argument is that appellate counsel failed to advance certain issues on appeal. A lawyer filing an *Anders* brief, however, is required to "refe[r] to anything in the record that might arguably support the appeal." *Anders v. California*, 386 U.S. 738, 744 (1967). Because the petitioner has neither presented the appellate brief nor described its contents, it is impossible for this Court to conclude that counsel failed to raise any of the items the petitioner faults her for not raising. Again, however, the respondent's failure to cite any cases for the proposition that a court may deny habeas relief on this basis persuades the Court not to do so.

### A. Failure to Challenge Limited Cross-Examination.

On cross-examination, Chief Barnett acknowledged that he interviewed Sullivan. Counsel then asked, "And did Marcus Sullivan tell you he possessed the gun?" When the government objected, counsel correctly conceded that the question called for hearsay, but he suggested that, because Chief Barnett interviewed Sullivan in connection with his investigation, his hearsay testimony should nevertheless be allowed. He offered no

---

[3]As a matter of law, "the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel, *Bolender*, 16 F.3d at 1573, and the Eleventh Circuit's ruling would appear to rule out the possibility of any other kind of issue. Counsel cannot be ineffective in failing to raise a meritless argument, and there would seem to be no reasonable likelihood of a reversal on appeal when the appellate court has already ruled that the record is devoid of any arguable issue of merit.

support for the existence of an "investigation exception" to the hearsay rule, and the Court therefore sustained the objection. (Doc. 69 at 59-61). The petitioner argues that this ruling, although it comported with the Federal Rules of Evidence, nevertheless violated his Sixth Amendment right to confront the witnesses against him. (Doc. 89 at 3).

When trial counsel does not invoke the Confrontation Clause in opposition to an evidentiary ruling limiting cross-examination of a witness, the constitutional issue is not preserved, and appellate review is limited to plain error. *United States v. Paul*, 194 Fed. Appx. 792, 793 n.1 (11th Cir. 2006); *see also United States v. Arbolaez*, 450 F.3d 1283, 1291 & n.8 (11th Cir. 2006) ("A hearsay objection to testimony at trial, standing alone, does not preserve a constitutional challenge under the Confrontation Clause for appeal," so that "we review this claim for plain error only"). Because trial counsel did not assert a Sixth Amendment right to inject hearsay, appellate counsel would have been required to prove a constitutional violation under the plain error standard.

"Plain error exists only where (1) there is an error; (2) the error is plain; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity or public reputation of a judicial proceeding." *United States v. Vance*, 494 F.3d 985, 993 (11th Cir. 2007) (internal quotes omitted). In order to be prejudicial or affect the petitioner's substantial rights, "the error must have ... affected the outcome of the district court proceedings." *United States v. Edouard*, 485 F.3d 1324, 1343 n.7 (11th Cir. 2007) (internal quotes omitted). "The standard for showing that is the familiar reasonable probability of a different result formulation ...." *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005).

Appellate counsel could not have met this daunting burden, most obviously because the petitioner has proffered no evidence that Sullivan in fact possessed the weapon and thus no basis for assuming that Chief Barnett would have testified that Sullivan admitted possessing the gun. While the petitioner testified that Sullivan had access to the car and so theoretically could have taken the gun, he acknowledged that he

knew nothing about Sullivan actually having the gun. (Doc. 69 at 84). Nor did Barnes. (*Id.* at 37). Moreover, counsel conceded he had received Chief Barnett's report of his interview of Sullivan and that it did not reflect that Sullivan had possessed the gun. (*Id.* at 60). Sullivan was identified to the venire as a potential defense witness, (Doc. 68 at 48-49), but the defense failed to call him.[4] Even now, three years after trial, the petitioner identifies nothing to suggest that Sullivan told anyone he possessed the weapon.

Even had Chief Barnett testified that Sullivan admitted possessing the gun, there is no reasonable probability that such evidence would have caused the jury not to convict the petitioner on the felon-in-possession count. As noted, two witnesses testified that they heard the petitioner admit to possessing the gun, and a third witness testified that he saw the petitioner in possession of the gun. The petitioner offers no reason these three witnesses should not be believed, other than his belief that the prosecution was a plot to cheat him out of $26. Nor would Sullivan's possession of the weapon, if believed by the jury, be in any way inconsistent with the petitioner's possession of it since, as the jury was charged, two persons can possess the same weapon, simultaneously or sequentially. (Doc. 69 at 119).

Because the issue the petitioner says appellate counsel should have raised is unsupported and thus meritless, counsel did not perform deficiently by failing to raise it on appeal, and the petitioner was not prejudiced by the failure.

### B. Failure to Challenge Denial of Acquittal.

When the government rested, trial counsel moved under Rule 29 for a judgment of acquittal, on the grounds of insufficient evidence that the petitioner possessed the firearm. That motion was denied. (Doc. 69 at 65-68). The petitioner argues that the motion should have been granted for lack of any evidence that the crime occurred in Washington

---

[4] Sullivan apparently was incarcerated at the time of trial in Washington County, (Doc. 69 at 61), but the defendant requested no writ of habeas corpus ad prosequendum.

County or in the Southern District of Alabama. (Doc. 78 Attachment at 3; Doc. 89 at 3-4).

A defendant has a constitutional right to be tried in the district (not the county) in which the offense occurred. *United States v. Roberts*, 308 F.3d 1147, 1151 (11th Cir. 2002). "A defendant may waive such right, however, by failing to raise a venue objection prior to trial." *Id*. at 1151-52. Only when the indictment alleges an incorrect venue and the defendant is ignorant of the error until trial is a venue challenge made at the close of the government's case timely. *Id*. at 1152. The petitioner raised no challenge to venue either before or during trial, so any objection was waived before appellate counsel became involved. *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006).

At any rate, the government need prove venue only by a preponderance of the evidence, and it can rely on circumstantial evidence and judicial notice. *Greer*, 440 F.3d at 1271. The testimony at trial established that the gun was stolen in McIntosh, Alabama and was sold in Calvert, Alabama. (Doc. 69 at 22, 37, 44-46). The Court takes judicial notice that these towns are in Washington County and that Washington County is in the Southern Division of the Southern District of Alabama. *See Greer*, 440 F.3d at 1272 (given evidence that offense occurred in Cusseta, "we take judicial notice that Cusseta, Georgia is the county seat of Chattahoochee County which is in the Columbus Division of the Middle District of Georgia.").

Because venue plainly was established and objection to venue waived, appellate counsel did not perform deficiently by failing to raise the issue on appeal, and the petitioner was not prejudiced by the failure.

### C. Failure to Challenge *Allen* Charge.

After about 3½ hours of deliberation, the jury reported that it had not reached a unanimous decision and that further deliberation would not be appropriate, needed or productive. The government requested an *Allen* charge, to which trial counsel objected.

The Court gave the charge and, about 45 minutes later, the jury returned with a verdict on Count One but not Count Two. (Doc. 70 at 2-7). The petitioner argues that the charge "coerced the jury" and thereby violated his constitutional rights. (Doc. 78 Attachment at 3-4; Doc. 89 at 4).

The threshold problem with the petitioner's argument is that the record fails to disclose that the jury changed its position after receiving the *Allen* charge. The foreperson reported only that "[w]e haven't reached a unanimous decision," (Doc. 70 at 2), without distinguishing between Counts One and Two. For all that appears on this record, when the jury made this report, it was deadlocked only as to Count Two, and it remained deadlocked on that count even after hearing the *Allen* charge.

At any rate, the jury's verdict can be reversed "only if we find that the giving of the *Allen* charge was inherently coercive," *United States v. Dickerson*, 248 F.3d 1036, 1050 (11th Cir. 2001) (internal quotes omitted), and that depends on the "totality of the circumstances." *United States v. Alls*, 232 Fed. Appx. 953, 954 (11th Cir. 2007). The only circumstance the petitioner cites is that the verdict was returned within an hour of the charge being given. As a matter of law, this fact cannot on its own support an *Allen* challenge. *See United States v. Chigbo*, 38 F.3d 543, 545-46 (11th Cir. 1994) (fifteen-minute gap between charge and guilty verdict did not show coercion); *see also United States v. McCarty*, 2007 WL 57094 at *2 (11th Cir. 2007) (noting that, when only the speed of the verdict is cited as a surrounding circumstance, *Chigbo* controls).

Because the petitioner identifies nothing with which to show that the *Allen* charge was inherently coercive, appellate counsel did not perform deficiently by failing to raise the issue on appeal, and the petitioner was not prejudiced by the failure.

### D. Failure to Challenge Denial of Downward Departure.

At sentencing, the petitioner presented a psychological report and moved for a downward departure based on diminished mental capacity. The Court reviewed the

report and denied the motion, finding the petitioner failed to show he suffered from a significantly reduced mental capacity that contributed substantially to the commission of the offense. (Doc. 71 at 11-19). The petitioner argues that counsel should have raised the issue on appeal because there was "ample evidence" supporting his motion. (Doc. 78 Attachment at 4).

"The Sentencing Reform Act prohibits a defendant from appealing a sentencing judge's refusal to make a downward departure from the guideline sentencing range." *United States v. Fossett*, 881 F.2d 976, 979 (11th Cir. 1989). Even after *United States v. Booker*, 543 U.S. 220 (2005), "[S]ection 3742(a) of Title 18 of the United States Code left us without jurisdiction to consider a defendant's appeal of a discretionary decision of the district court to not apply a downward departure ...." *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir. 2005). The only exception arises when "a district court's refusal to consider a departure ... is based on the belief that it lacked the authority to consider a departure." *United States v. Gomez-Villa*, 59 F.3d 1199, 1202 (1995).

The petitioner does not allege that the Court believed it lacked authority to consider a downward departure and, as the record plainly reflects, the Court understood perfectly well that it could consider such a departure. The petitioner argues only that the evidence supported a downward departure, and the Court's disagreement at sentencing with that proposition is not reviewable on appeal. *United States v. Holden*, 61 F.3d 858, 860-62 (11th Cir. 1995) (where the district court understood it had "discretion to depart downward under proper circumstances" but found that the defendant's mental disorder did not contribute to the commission of the offense, "[w]e may not review the merits of that decision.").

Because the appellate court lacked jurisdiction to consider an appeal of the denial of a downward departure, appellate counsel did not perform deficiently by failing to raise the issue on appeal, and the petitioner was not prejudiced by the failure.

**E. Failure to Challenge the Verdicts as Inconsistent.**

The jury found the petitioner guilty under Count One of being a felon in possession of a firearm. It reached no decision with respect to the charge in Count Two of possessing, selling, etc. a stolen firearm. The petitioner argues that he was entitled to mistrial or acquittal based on inconsistent verdicts. (Doc. 78 Attachment at 4).

As a threshold matter, there are no inconsistent verdicts here, because there is only one verdict, not two. *United States v. Arrow*, 739 F.2d 549, 550 (11th Cir. 1984) ("[T]he mistrial on the conspiracy count, being no verdict at all, is not a verdict inconsistent with the verdict of guilt on the facilitation count."). Even had the jury acquitted the petitioner on Count Two, the verdicts would not have been inconsistent, because the jury could have concluded that the firearm the petitioner possessed had not been stolen or that the petitioner had no reasonable cause to believe it was stolen.

Even were there two verdicts, and even were they inconsistent, "as long as the guilty verdict is supported by sufficient evidence, it must stand, even in the face of an inconsistent verdict on another count." *United States v. Mitchell*, 146 F.3d 1338, 1345 (11th Cir. 1998); *accord United States v. Schlaen*, 300 F.3d 1313, 1317 (11th Cir. 2002). That the petitioner is a felon was established by stipulation and the petitioner's own testimony, and that he possessed the firearm was established by two witnesses who heard the petitioner admit it and a third who saw him possess the weapon. This overwhelming evidence was far more than merely "sufficient."

Because there were neither legal nor factual grounds for challenging the guilty verdict as inconsistent, appellate counsel did not perform deficiently by failing to raise the issue on appeal, and the petitioner was not prejudiced by the failure.

**III. Evidentiary Hearing.**

"Unless the motion [under Section 2255] and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice

-15-

thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255.  However, an evidentiary hearing is not required in every case.  For example, no evidentiary hearing is required:

- Where the petitioner's claim is "patently frivolous," *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989);
- Where the claim is "based upon unsupported generalizations," *id.*;
- Where the petitioner has not "allege[d] facts that, if true, would entitle him to relief," *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002);
- Where the facts alleged are not "reasonably specific [and] non-conclusory," *id*. at 714-15;
- "[W]here the petitioner's allegations are affirmatively contradicted by the record," *id.* at 715;
- Where the petitioner's version of the facts has already been accepted as true, *Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003); and
- Where "the district court can determine the merits of the ineffectiveness claim based on the existing record." *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983).

As is evident from the Court's discussion above, each of the petitioner's claims is subject to one or more of these exceptions.  Accordingly, the petitioner is not entitled to an evidentiary hearing.

## CONCLUSION

For the reasons set forth above, the petitioner's motion to vacate is **denied**.

DONE and ORDERED this 9th day of October, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
